IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY

CHARLES W. RAMSEY,

       Petitioner,

v.                         Case No. 5:06-cv-00637

CHARLES T. FELTS, Warden,
FCI Beckley, and
EDWARD F. REILLY, Chairman,
United States Parole Commission,

       Respondents.


## PROPOSED FINDINGS AND RECOMMENDATION

This is an action for habeas corpus relief, filed pursuant to the provisions of 28 U.S.C. § 2241. Pro se Petitioner, Charles W. Ramsey, is incarcerated at FCI Beckley. This case was referred to this United States Magistrate Judge by standing order to consider the pleadings and evidence, and to submit proposed findings of fact and recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). Petitioner filed an Application (docket # 2), supported by a Memorandum (# 3), on August 16, 2006. An Order to Show Cause (# 6) required the filing of a Response (# 13), which is supported by exhibits (## 13-2 and 13-3). Petitioner filed a Traverse (# 22) and, with leave of court, an Amended/Supplemental Traverse (# 27).

## FACTS AND PROCEDURAL HISTORY

On February 14, 1975, Petitioner was sentenced by the U.S. District Court for the District of Columbia to serve thirty years for importation of cocaine with intent to distribute (to be followed by a six year special parole term), and two years consecutive for unlawful possession of a pistol. United States v. Ramsey, Nos. 74CR-623 and 74CR-624 (D.D.C. Feb. 14, 1975). (# 13-2, at 2-5, Ex. 1.)

On June 18, 1976, Petitioner was sentenced by the U.S. District Court for the Southern District of New York to serve 15 years concurrent for conspiracy to violate the federal narcotic laws. United States v. Ramsey, No. 75CR-1112 (S.D.N.Y. June 18, 1976). Id., at 3-4.

The Bureau of Prisons combined the sentences, resulting in an aggregate sentence of 32 years, with a six year special parole term. Id., at 5. Petitioner was eligible for release on parole on February 13, 1985. Id., at 6. Petitioner was paroled on May 14, 1989. Id., at 8, Ex. 2.

On November 21, 1995, Petitioner was arrested in the District of Columbia and charged with possession with intent to distribute 500 or more grams of [powder] cocaine. United States v. Ramsey, No. 1:95-cr-00326-PLF-1 (D.D.C.). He was indicted and detained pending trial.

On January 3, 1996, the Parole Commission issued a violator

2

warrant for Petitioner, charging him with the new criminal conduct alleged in the indictment, and numerous urine screens which were positive for controlled substances. (# 13-2, at 10-12, Exs. 3 and 4.)

Petitioner went to trial before a jury and was convicted on May 21, 1996.  On December 18, 1997, he was sentenced to 210 months, based on a Total Offense Level of 34, a Criminal History Category of IV, and a guideline range of 210 to 262 months.  His term of supervised release was eight years.  Id., at 13-18, Ex. 5. Petitioner was designated to FCI Beckley, and the parole violator warrant was placed as a detainer against him.  Id., at 19, Ex. 6.

On August 16, 2000, Petitioner filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255, in the District of Columbia.  After numerous extensions of time for both Petitioner and the United States, the § 2255 motion was granted by Order entered July 1, 2004, and a new trial was ordered.  United States v. Ramsey, No. 1:95-cr-00326-PLF-1, docket # 143.  The decision granting the § 2255 motion is found at # 13-2, Ex. 9, and is reported at United States v. Ramsey, 323 F. Supp.2d 27 (D.D.C. 2004).  The United States and Petitioner executed a plea agreement (# 13-3, at 33-35, Ex. 14), and on December 15, 2004, Petitioner pled guilty to the same offense (possession with intent to distribute more than 500 grams of powder cocaine) and was sentenced to time served, plus a term of supervised release of eight years.

3

On December 15, 2004, the detainer was activated and Petitioner was taken into the custody of the Parole Commission.  (# 13-2, at 20-21, Ex. 7.)

On February 16, 2005, Petitioner and his court-appointed attorney appeared for a parole revocation hearing at FCI Beckley, at which he admitted committing the underlying criminal conduct. The Hearing Examiner determined that Petitioner's offense behavior was rated as Category 8 (the highest possible) because it involved the sale of more than 37 kilograms of cocaine (total amount 44 kilos of cocaine and seven ounces of heroin).  His Salient Factor Score was 2 ("poor").[1]  The re-parole guidelines for decisionmaking set forth at 28 C.F.R. §§ 2.20 and 2.21, provided for 180+ months to be served before release.  (# 13-2, Ex. 10.)

On March 14, 2005, the Parole Commission issued its Notice of Action, revoking Petitioner's parole, crediting none of the time he spent on parole, and continuing him to a presumptive re-parole on October 21, 2014, after service of 228 months.  Id.  A statutory interim hearing was set for February 2007.  Id.

Petitioner and his attorney filed a timely appeal.  (# 13-2, Ex. 11.)  On June 22, 2005, the National Appeals Board affirmed the previous decision.  (# 13-2, Ex. 12.)

Petitioner then directed his attention to his criminal case in the District of Columbia.  In September of 2005, he filed motions

---

[1]   The two points were attributable to Petitioner's age.

4

with that Court, asking that his acceptance of responsibility be reflected on the record.  By Order entered November 16, 2005, the U.S. District Court for the District of Columbia recited the procedural history leading to Petitioner's guilty plea and sentence of "time served," and stated that "[h]ad the circumstances of the plea been different such that the Court had found it necessary to address the application of Mr. Ramsey's acceptance of responsibility to his previous Guidelines score, the Court would have reduced his Guidelines score pursuant to § 3E1.1." (# 13-3, at 27, Ex. 14.)

Meanwhile, Petitioner sought to re-open his case before the Parole Commission.  On November 7, 2005, he wrote to the Parole Commission, raising the issue of his entitlement to a "2-level reduction in offense level" which, he argued, would have resulted in his being placed in Category Seven for the purpose of reparole. Id., Ex. 13.

On November 21, 2005, after receiving the November 16, 2005 Order from the U.S. District Court for the District of Columbia, Petitioner submitted a copy of the Order with an "Inmate Request to Staff," asking that the Order be forwarded to the Parole Commission for consideration of re-opening of his case.  Id., Ex. 14.

On January 4, 2006, Petitioner again wrote to the Parole Commission, requesting a new revocation hearing based on the "new favorable information" in the November 16, 2005 Order.  Id., Ex.

15.

In a memorandum dated February 10, 2006, a Case Analyst described Petitioner's request for re-opening based on the November 16, 2005 Order, his age (66), and his lack of disciplinary infractions.[2]  <u>Id.</u>, Ex. 16.  The Case Analyst recommended that the request to re-open be denied because Petitioner had "not submitted any new information of substantial significance."  <u>Id.</u>

On March 7, 2006, by letter from the Case Analyst, Petitioner was informed that the Parole Commission had denied his request to re-open.  <u>Id.</u>, Ex. 17.  This action was filed on August 16, 2006.

By motion filed April 26, 2007 (# 25), Petitioner sought leave to supplement, which was granted (# 26).  Petitioner's supplemental pleading (# 27) contends that the Parole Commission has violated its procedures and Petitioner's rights by failing to conduct an interim parole hearing, as required by 28 C.F.R. § 2.14(a).

### <u>GROUNDS FOR RELIEF</u>

Petitioner raises five grounds for relief, which are stated in

---

[2] The memorandum did not accurately summarize the November 16, 2005 Order.  The Case Analyst wrote: "The offender is now requesting that the commission reopen his case based upon the court issuing an order reflecting that a more lenient decision would have been rendered at the time of sentencing, *if the court would have been aware of the offender's acceptance of responsibility for his actions.*"  The Court <u>was</u> aware of Petitioner's acceptance of responsibility.  The Order states: "Nonetheless, the fact that Mr. Ramsey clearly met the conditions of § 3E1.1 was a significant factor in this Court's acceptance of the plea."  The memorandum asserts that "[t]he court's decision would not have impacted that commission's position to continue the offender until a presumptive date of 10-21-2014."

his Application as follows:

(a) Ground one: The U.S. Parole Commission failed to follow its regulations and procedures in not reopening the petitioner's parole case after receiving "creditable, new, and significant information."

(b) Ground two: The U.S. Parole Commission failed to comply with the Administrative Procedures Act in a manner not authorized by its regulations and without observance to procedures required by law.

(c) Ground three: The U.S. Parole Commission did not properly calculate the petitioner's guideline range, regarding his parole violation, by not factoring in his lawful entitlement to a reduction in offense level for acceptance of responsibility.

(d) Ground four: Whether the U.S. Parole Commission should have relied on the 1996 PSI to determinate petitioner's guidelines range, which became invalidated upon the conviction and sentence being vacated.

(e) Ground five: Whether plea agreement may validly stipulate to otherwise inapplicable guide factor.

### Ground one: Failure to re-open

Petitioner argues that the Parole Commission failed to comply with 28 C.F.R. § 2.28(a) when it denied his request to re-open his revocation hearing.  (Pet. Mem., # 3, at 6.)  He contends that the November 16, 2005 Order is "new information of substantial significance favorable to the prisoner," and thus meets the criterion of § 2.28(a).

Respondent asserts that the November 16, 2005 Order and acceptance of responsibility are not factors which are considered in computing parole and reparole guidelines, and that the Parole Commission has broad discretion to determine whether to re-open a

revocation hearing, even if "new information of substantial significance favorable to the prisoner" is presented. (Response, # 13, at 4-5.)

Petitioner's Traverse responds that the Parole Commission has overlooked the fact that his United States Sentencing Guidelines range (not the parole guidelines) was affected by the November 16, 2005 Order. (Traverse, # 22, at 6-7.) He contends that the Parole Commission incorrectly calculated his offense severity and salient factor score, and that he should be eligible for parole after serving 100 months. <u>Id.</u>, at 8-10. He elaborates upon this argument in his Amended Traverse, # 27, at 9-13. In particular, he claims that "a two or three point reduction for acceptance of responsibility would place Mr. Ramsey in a different 'category' under Offense Characteristics. In a nutshell, Ramsey would go from a category eight to a category seven within the current U.S. Parole Commission Guidelines." <u>Id.</u>, at 12.

Petitioner has cited no authority to support his assertion that a two-level reduction in his Total Offense Level under the United States Sentencing Guidelines would have any effect whatsoever on his Category of Offense Characteristics or his Salient Factor Score under the United States Parole Commission parole and reparole guidelines. The two systems of guidelines are completely distinct and were promulgated under completely different statutes; a finding under one system does not transfer to the other

8

system.

Petitioner pled guilty to possession with intent to distribute more than 500 grams of powder cocaine. The amount of cocaine involved was approximately 44 kilograms. The U.S. Parole Commission Offense Behavior Severity Index, 28 C.F.R. § 2.20, Chapter Nine (Offenses Involving Illicit Drugs), Subchapter C (Cocaine Offenses), provides that if evidence of weight, but not purity, is available, the following grading is used: *Cocaine*: Extremely large scale – 18.75 kilograms or more. "Extremely large scale" is graded as offense characteristic Category Eight. The offense characteristic category is determined by quantity of drugs, and does not incorporate acceptance of responsibility as a factor.

Petitioner's Salient Factor Score ("SFS"), as noted above, was 2 ("poor"). The SFS is based on factors which have nothing to do with whether a defendant is considered to have accepted responsibility for his criminal conduct.

The Parole Commission certainly acted within its discretion in finding that the November 16, 2005 Order relating to Petitioner's acceptance of responsibility was not "new information of substantial significance favorable to the prisoner" to justify re-opening his parole revocation hearing.

The undersigned proposes that the presiding District Judge **FIND** that Petitioner's first ground for relief is without merit, as he has failed to show that the Parole Commission violated its

9

regulations in denying his request to re-open his parole revocation hearing.

### Ground two: Administrative Procedure Act

Petitioner contends that the Parole Commission violated the Administrative Procedure Act because he received only a letter signed by a Case Analyst, and there is no indication that any one Commissioner or the Commission itself considered his request for re-opening.  (# 3, at 7-8.)

It is plain that this ground for relief is meritless because the Respondents' Exhibit 16 demonstrates that a Commissioner, Vice Chairman Cranston Mitchell, reviewed the matter, agreed with the recommendation of the Case Analyst, and signed his name.  (# 13-3, at 48, Ex. 16.)  Petitioner's additional arguments, found in his Traverse and Amended Traverse, to the effect that Commissioner Mitchell rubber-stamped the Case Analyst's memorandum, thereby abusing his discretion, are frivolous.

The undersigned proposes that the presiding District Judge **FIND** that Petitioner's second ground for relief is without merit, as he has failed to show that the Parole Commission violated the Administrative Procedure Act or otherwise failed to review his request for re-opening before making a final decision.

### Ground three: Acceptance of responsibility

This ground for relief is basically the same as the first ground.  Petitioner claims that the Parole Commission failed to

10

properly calculate his guideline range, by not considering a reduction in his offense level for acceptance of responsibility. (# 3, at 8-9.)  For the reasons stated with respect to his first ground for relief, the undersigned proposes that the presiding District Judge **FIND** that Petitioner's third ground for relief is without merit, as acceptance of responsibility is not a factor which the Parole Commission uses in determining the guideline range for the purpose of parole or re-parole.

### Ground four: Presentence report

Petitioner argues that his 1996 presentence report should not have been used by the Parole Commission as it contained inaccurate and prejudicial information and drug amounts.   (# 3, at 9.)

Respondents contend that the plain language of the plea agreement sets forth Petitioner's agreement that the 1996 presentence report would be used.  (# 13, at 5-6.)

The plea agreement executed by Petitioner and the United States provided, in pertinent part, as follows:

Re: United States v. Charles W. Ramsey, Cr. No. 95-0326(PLF)

3. * * * This plea agreement seeks to resolve that appeal [by the government of the granting of Petitioner's § 2255 motion], and all further litigation in connection with this case.  A presentence report was prepared in connection with the sentence.  Your client agrees to accept the final version of that report, dated August 22, 1996, which was used by the court to impose sentence of 210 months followed by 8 years of supervised release. The sentence was imposed on December 17, 1997.  The parties agree to accept this pre-sentence report including its guideline range, agree to accept the offense conduct as a factual basis for the entry of a

11

> guilty plea, and neither party will contest any portion
> of the pre-sentence report at sentencing or appeal or in
> connection with any post-conviction petition.

(# 13-3, at 22-23, Ex. 13.)  Petitioner accepted the plea agreement "without reservation," "voluntarily," and of his "own free will, intending to be legally bound."  Id., at 24.

The undersigned proposes that the presiding District Judge **FIND** that Petitioner specifically agreed to the use of the 1996 presentence report's contents, and that his fourth ground for relief lacks merit.

### Ground five:  Breach of plea agreement

Petitioner's arguments on this ground for relief are found in his Memorandum under both grounds four and five.  Under ground four, he contends that the Parole Commission, as part of the Department of Justice, was bound by the plea agreement provision not to prosecute him further; therefore he asserts that he should have been released rather than incarcerated on the parole revocation.  (# 3, at 10).  He contends that the plea agreement has been violated and that it should be enforced in the interest of justice and fairness.  Id., at 11.

Under ground five, Petitioner argues that a plea agreement with a Fed. R. Crim. P. 11(c)(1)(C) stipulation as to a particular sentence which is accepted by the court, thereafter binds the court.  Id., at 11-12.

Respondents assert that the plea agreement does not affect

Petitioner's prior "old law" conviction and the Parole Commission's jurisdiction over him, citing <u>Augustine v. Brewer</u>, 821 F.2d 365 (7th Cir. 1987). (# 13, at 6.) They argue that the plea agreement only pertains to the resolution of the 1995 criminal charge. <u>Id.</u>

The plea agreement executed by Petitioner and the United States provided, in pertinent part, as follows:

Re: United States v. Charles W. Ramsey, Cr. No. 95-0326(PLF)

This letter confirms the agreement between your client, Charles W. Ramsey, and the Office of the United States Attorney for the District of Columbia (hereinafter also referred to as "the Government" or "this Office").
* * *

<u>Charles Ramsey's Obligations, Acknowledgments and Waivers:</u>

* * *

3. * * * This plea agreement seeks to resolve that appeal [by the government of the granting of Petitioner's § 2255 motion], and all further litigation in connection with this case. A presentence report was prepared in connection with the sentence. Your client agrees to accept the final version of that report, dated August 22, 1996, which was used by the court to impose sentence of 210 months followed by 8 years of supervised release. The sentence was imposed on December 17, 1997. The parties agree to accept this pre-sentence report including its guideline range, agree to accept the offense conduct as a factual basis for the entry of a guilty plea, and neither party will contest any portion of the pre-sentence report at sentencing or appeal or in connection with any post-conviction petition.

<u>THE GOVERNMENT'S OBLIGATIONS, ACKNOWLEDGMENTS AND WAIVERS:</u>

4. In exchange, the Government will withdraw its appeal of the trial judge's decision to grant the petition for relief under the 28 U.S.C. § 2255.

5. The United States Attorney's Office for the District of Columbia will not prosecute your client for any other charges arising out of the transactions and events that are the subject of the indictment and this guilty plea.

Special Condition: Sentence is Binding on the Sentencing Court

6. If the Court accepts the terms and conditions of this plea agreement, and if the defendant completes the required plea colloquy in open court, the court will proceed immediately to sentencing without additional delay. The Government estimates that your client has been continuously incarcerated on this offense since November 21, 1995. The sentence imposed will be time served (approximately 109 months) to be followed by eight years of supervised release. No other aspect of the sentence will be changed except the sentence of 210 months will be vacated and a sentence of time served will be imposed with credit since November 21, 1995. Since the sentence is to be time served, the parties contemplate that the defendant will be processed for release by the U.S. Marshals Service in the cell block of the U.S. Courthouse and will be released to commence his period of supervised release from there without being returned to any other prison facility. Ordinarily, the court is not bound to impose any particular sentence when the parties reach a plea agreement. In this agreement however, the parties intend to invoke the rarely used provisions of Federal Rule of Criminal Procedure 11(c)(1)(C), which binds the court to impose a particular sentence upon acceptance of the guilty plea. By the terms of this agreement, the parties and the court acknowledge that this sentence is below the guideline range, but nevertheless, agree that this is the appropriate sentence to impose. Pursuant to the provisions of §6B1.2(c), the agreed upon sentence departs from the applicable guideline range for justifiable reasons. The justifiable reasons are that such an agreement preserves the conviction, ends further litigation in this matter including appellate litigation, and in exchange, results in your client's immediate eligibility for supervised release.

7. There are no other agreements, promises, understandings or undertakings between your client and this Office. Your client understands and acknowledges

14

that there can be no valid addition or alteration to this
agreement unless the modification is made on the record
in open Court or made in a writing signed by all of the
parties.

(# 13-3, at 22-23, Ex. 13.) Petitioner accepted the plea agreement

"without reservation," "voluntarily," and of his "own free will,

intending to be legally bound." Id., at 24.

It is apparent from the language of the plea agreement that

neither the United States Attorney, nor the defense attorney, nor

the presiding judge (the Hon. Paul L. Friedman), were aware of the

possibility that the Parole Commission would step in and disrupt

their agreement.  In fact, by Order entered September 27, 2005,

Judge Friedman expressed his impatience that Petitioner was not

promptly released: "Eight months have passed, however, and the

Bureau of Prisons has yet to release him." United States v.

Ramsey, No. 1:95-cr-00326-PLF, docket # 154.  He ordered a status

conference as follows:

> Upon consideration of the entire record of this
> case, it is hereby
>
> ORDERED that defense counsel Steven C. Tabackman and
> counsel for the government shall appear for a status
> conference on October 6, 2005 at 9:45 a.m.  Defendant's
> presence is not required.  Counsel shall apprise the
> Court of what efforts have thus far been made to
> implement the Court's December 17, 2004 Judgment
> sentencing defendant to time served, and shall confer on
> a strategy for resolving jointly any remaining issues
> with respect to Mr. Ramsey's continued incarceration.

Id., at 2.  After two proceedings involving the Assistant U.S.

Attorney and Mr. Tabackman, Judge Friedman entered the Order of

15

November 16, 2005, noting Petitioner's acceptance of responsibility.

Any discussion of whether the United States has breached a plea agreement must begin with Santobello v. New York, 404 U.S. 257 (1971). In that case, the Supreme Court held that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." 404 U.S. at 262.

> On this record, petitioner "bargained" and negotiated for a particular plea in order to secure dismissal of more serious charges, but also on condition that no sentence recommendation would be made by the prosecutor. It is now conceded that the promise to abstain from a recommendation was made, and at this stage the prosecution is not in a good position to argue that its inadvertent breach of agreement is immaterial. The staff lawyers in a prosecutor's office have the burden of "letting the left hand know what the right hand is doing" or has done. That the breach of agreement was inadvertent does not lessen its impact.

Id. The Court remanded the case to New York, with the State court to determine whether Petitioner would be entitled to specific performance of the agreement on the plea, or an opportunity to withdraw the guilty plea. Id., at 263.

In the Fourth Circuit, analysis of breach of plea agreement claims begins with United States v. Harvey, 791 F.2d 294 (4th Cir. 1986). In Harvey, a defendant faced investigation and prosecution in three different districts relating to a drug smuggling and distribution operation. 791 F.2d at 295. He executed a plea agreement which included a provision that "[t]he Eastern District

16

of Virginia further agrees not to prosecute MICHAEL LEE HARVEY for any other possible violations of criminal law arising from the offenses set out in the indictment or the investigation giving rise to those charges." <u>Id.</u> at 296 n.1.  When districts other than the Eastern District of Virginia attempted to prosecute him, Harvey sought to enforce the plea agreement and enjoin the prosecutions. <u>Id.</u>, at 297.  Harvey and his attorney thought that the Virginia plea agreement would "'put behind him' all of Harvey's possible exposure to criminal liability for all violations 'arising from' the general investigation leading to his indictment." <u>Id.</u>, at 298.

The <u>Harvey</u> decision notes that courts rely on rules and principles relating to commercial contracts as the body of law most relevant to plea agreements, tempered by two considerations. <u>Id.</u>, at 300.  The two considerations were described as follows:

> First, the defendant's underlying "contract" right is constitutionally based and therefore reflects concerns that differ fundamentally from and run wider than those of commercial contract law. *See Mabry v. Johnson*, 467 U.S. at 509, 104 S. Ct. at 2548 (broken government promise that induced guilty plea implicates due process clause because it impairs voluntariness and intelligence of plea). Second, with respect to federal prosecutions, the courts' concerns run even wider than protection of the defendant's individual constitutional rights – to concerns for the "honor of the government, public confidence in the fair administration of justice, and the effective administration of justice in a federal scheme of government." *United States v. Carter*, 454 F.2d 426, 428 (4th Cir. 1972).

<u>Id.</u>

<u>Harvey</u> found there to be "ordering principles and guidelines"

which were relevant to that case.  The first principle was whether the agreement was ambiguous or unambiguous on its face, a question that should ordinarily be decided by the court as a matter of law. "If it is unambiguous as a matter of law, and there is no suggestion of government overreaching of any kind, the agreement should be interpreted and enforced accordingly."  Id.

The second principle is that the government should be held to a "greater degree of responsibility than the defendant (or possibly than would be either of the parties to commercial contracts) for imprecisions or ambiguities in plea agreements."  Id., at 301 (citations omitted).  It is significant that the government is usually the party which prepared the plea agreement.

The Court addressed the plea agreement language that promised that "[t]he Eastern District of Virginia further agrees not to prosecute MICHAEL LEE HARVEY for any other possible violations of criminal law arising from the offenses set out in the indictment or the investigation giving rise to those charges."  The Court found the promise to be ambiguous as a matter of law, in that it identified neither (a) the only prosecutorial agency bound not to prosecute, nor (b) the only geographical area within which the obligation not to prosecute existed.  Id.  The decision noted the mixing of prosecutorial identifiers in the agreement: "the Government" and "the Eastern District of Virginia."  Id., at 301-02.  The opinion found that it was clear from the record that both

18

Harvey and his attorney firmly believed, and stated to the Virginia court, that the plea agreement ended his exposure for drug-related offenses related to those for which he was indicted.  Id., at 302. Meanwhile, the prosecutor stood silent, never contradicting the defense statements.  Id.

The Harvey decision also addressed the principle that plea agreements, negotiated through specific United States Attorneys, are those of the Government at large, unless they are specifically limited to particular agents or agencies of Government as the contracting party.  Id., at 302-03.

For all these reasons, Harvey held that the plea agreement was ambiguous as a matter of law, and "must be interpreted to prevent further prosecutions for such offenses anywhere and by any agency of Government."  Id., at 303.

The next relevant Fourth Circuit case is United States v. Jureidini, 846 F.2d 964 (4th Cir. 1988), which involved the Parole Commission and an improvidently written plea agreement.  In this case, the plea agreement recited that the amount of cocaine involved was less than five kilograms, with the expectation that the Parole Commission would classify the offense as Category Six. The defendant's presentence report reflected a total involvement of 28.5 kilograms of cocaine, a finding that the district court refused to strike.  The district court did make a specific finding that the defendant's case involved less than five kilograms.  846

19

F.2d at 965.   The Parole Commission placed the defendant in
Category Eight, and he appealed, alleging breach of the plea
agreement.

> This frustration of the bargain is due in large
> measure to the highly improvident nature of the plea
> agreement itself.  The agreement seemingly contemplates
> either limiting the information made available to the
> parole board or dictating the action to be taken by the
> parole board in a particular case.  Either course
> frustrates the Parole Commission's duty to determine when
> release is appropriate for a particular defendant.  *See
> United States v. Addonizio*, 442 U.S. 178, 188-89, 99 S.
> Ct. 2235, 2242-43, 60 L. Ed.2d 805 (1979).  As a result,
> when the Parole Commission reached a decision contrary to
> that anticipated by the plea agreement, the purpose of
> the plea agreement was never fulfilled.
>
> Regardless of the reasons for the frustration of the
> bargain, that frustration calls into question the
> validity of the plea.  "[W]hen a plea rests . . . on a
> promise or agreement of the prosecutor, so that it can be
> said to be part of the inducement or consideration, such
> promise must be fulfilled." *Santobello v. New York*, 404
> U.S. 257, 262, 92 S. Ct. 495, 499, 30 L. Ed.2d 427
> (1971).   To ensure the voluntariness and validity of
> appellant's plea, the court has a duty to ensure that the
> bargain represented by the plea agreement is not
> frustrated.  *See United States v. Harvey*, 791 F.2d 294,
> 300-03 (4th Cir. 1986); *Correale v. United States*, 479
> F.2d 944, 947-49 (1st Cir. 1973).

Id., at 965-66.  The Court left it to the sound discretion of the

district court whether to order specific performance, some other

form of equitable relief, or rescission of the plea agreement.

Id., at 966.

Another frequently cited Fourth Circuit case concerning breach

of a plea agreement is United States v. Peglera, 33 F.3d 412, 414

(4th Cir. 1994), in which the Court wrote: "Because a government

that lives up to its commitments is the essence of liberty under law, the harm generated by allowing the government to forego its plea bargain obligations is one which cannot be tolerated."

Respondents rely on Augustine v. Brewer, 821 F.2d 365 (7th Cir. 1987), a habeas corpus case in which Augustine claimed that the Parole Commission breached his plea agreement by considering factors in addition to the specific allegations to which he pled guilty, thus raising his Offense Category level.   The plea agreement is not re-printed in the opinion.   The Court held that "the plea agreement between petitioner and the government contains nothing to indicate an intent to bind the Parole Commission; consequently, there was no breach of the agreement."   821 F.2d at 369.

Turning now to the case at bar, analyzing it under the cases addressing breach of a plea agreement, and beginning with Santobello, it is clear that there was a plea agreement between Petitioner and the Office of the United States Attorney for the District of Columbia, which was written by the representative of the United States Attorney's Office, pursuant to Fed. R. Crim. Pro. 11(c)(1)(C).   The agreement's paragraphs 5 and 6 contain very significant promises to Petitioner, the benefit of which he has not received.   Contrary to paragraph 6, Petitioner was not and has not been released from custody to begin serving his term of supervised release; despite paragraph 5, Petitioner's parole was revoked based

21

on facts "arising out of the transactions and events that are the subject of the indictment and guilty plea." The United States, however, did receive all the benefits of its bargain with Petitioner: he pled guilty; he served his sentence; the government avoided the appeal of the § 2255 motion; and the government avoided the new trial of the case. The government's promises were not fulfilled, as required by <u>Santobello</u>.

Under the <u>Harvey</u> decision, the alleged breach of the plea agreement must be considered in light of due process of law (voluntariness of the plea), and the "honor of the government, public confidence in the fair administration of justice, and the effective administration of justice."

The first issue under <u>Harvey</u> is whether the plea agreement is ambiguous. If it is unambiguous, it should be interpreted and enforced. Paragraph six of the plea agreement is utterly clear as to the sentence to be imposed for the 1995 case. The agreed sentence was "time served," and that was the sentence imposed. The *result* contemplated by the parties and by the sentencing court was Petitioner's "*immediate* eligibility for supervised release," as demonstrated by the unusual provision that Petitioner would be "processed for release" in the cell block of the courthouse where he entered his plea and was sentenced. [Emphasis added.]

Paragraph five of the plea agreement is also clear. Unlike the <u>Harvey</u> plea agreement, the opening paragraph of Petitioner's

plea agreement provides that "the Government" and "this Office" are defined to mean the "Office of the United States Attorney for the District of Columbia."   Thus paragraph five identified the only prosecutorial agency bound not to prosecute Petitioner:

> 5.   The United States Attorney's Office for the District of Columbia will not prosecute your client for any other charges arising out of the transactions and events that are the subject of the indictment and this guilty plea.

It is also clear that Petitioner's parole revocation (that is, "other charges") arose out of the transactions and events which were the subject of the indictment and guilty plea, but the prosecuting authority was the Parole Commission, not the United States Attorney's Office.

While the language in paragraphs five and six is clear when each paragraph is read separately, the meaning of the plea agreement is muddled when they are read together in the context of the facts.   One paragraph mandates Petitioner's immediate release; the other purports to limit the authority of the contracting party.

When this case is compared to Jureidini, striking similarities are evident.   In both cases, the Parole Commission's decision was contrary to that anticipated by a plea agreement, thus frustrating the bargain and calling into question the validity of the guilty plea.   In Jureidini, a 1988 case, the parties at least anticipated that the Parole Commission would do something; in this case, it appears that the parties and the court never gave the Parole

Commission a thought. Whether the Parole Commission's action was contemplated or not, the holdings in Harvey and Jureidini establish that "the court has a duty to ensure that the bargain represented by the plea agreement is not frustrated." Jureidini, 846 F.2d at 965-66 (citing Harvey, 791 F.2d at 300-03).

Based on this analysis of the relevant cases, the undersigned proposes that the presiding District Judge **FIND** as follows:

1. Petitioner's plea rested in a significant degree on a promise or agreement of the prosecutor that Petitioner would be sentenced to time served and would be immediately released to begin service of his term of supervised release;

2. While Petitioner was sentenced to time served, the prosecutor's promise has not been fulfilled because Petitioner was not immediately released;

3. Petitioner's rights under the plea agreement are constitutionally based in the Due Process Clause;

4. Violation of Petitioner's rights under the plea agreement impairs confidence in the voluntariness and intelligence of his guilty plea;

5. The honor of the United States government, the public confidence in the fair administration of justice, and the effective administration of justice are adversely affected by the government's failure to fulfill its promises in Petitioner's plea agreement;

24

6.   The United States is held to a greater degree of responsibility than Petitioner for imprecision or ambiguity in a plea agreement;

7.   The United States wrote Petitioner's plea agreement;

8.   Petitioner's plea agreement is ambiguous as a matter of law because it purported to bind only the United States Attorney's Office, but it made representations and promises affecting other agencies within the U.S. Department of Justice on which representations and promises Petitioner, his counsel, and the District of Columbia court reasonably relied;

9.   The Parole Commission's action was unanticipated by the plea agreement and resulted in the purpose of the plea agreement not being fulfilled;

10.   It is the court's duty to ensure that the bargain represented by the plea agreement is not frustrated.

Accordingly, it is respectfully **RECOMMENDED** that the Petitioner's Application for Writ of Habeas Corpus be granted, and the presiding District Judge order Petitioner's immediate release to commence his period of supervised release.

### Additional ground: Interim hearing

Petitioner complains that the Parole Commission has failed to conduct an interim hearing of his case as required by statute and regulation. (# 27.) He argues that at such a hearing, he would have the opportunity to present his arguments concerning acceptance

of responsibility.  <u>Id.</u>

The Parole Commission is mandated to conduct interim parole hearings by 18 U.S.C. § 4208(h) as follows:

> (h) In any case in which release on parole is not granted, subsequent parole determination proceedings shall be held not less frequently than:
> (1) eighteen months in the case of a prisoner with a term or terms of more than one year but less than seven years; and
> (2) twenty-four months in the case of a prisoner with a term or terms of seven years or longer.

The regulations incorporate the statutory mandate at 28 C.F.R. § 2.14.  The purpose of an interim hearing is "to consider any significant developments or changes in the prisoner's status that may have occurred subsequent to the initial hearing." § 2.14(a). Petitioner's term exceeded seven years; thus he was scheduled for an interim hearing in February, 2007.  § 2.14(a)(1)(ii); # 13-2, Ex. 10.  Petitioner contends that the hearing has not taken place as of June, 2007.

Respondents have not answered this allegation, as their response was filed on November 16, 2006 (# 13).

The court assumes that Petitioner is correct that he has not had an interim hearing which should have occurred in February, 2007.  Petitioner has not, however, exhausted his administrative remedies with respect to this claim.  For that reason, it is inappropriate to address this issue in this case.

The parties are hereby notified that this Proposed Findings

and Recommendation" is hereby filed, and a copy will be submitted to the Honorable Thomas E. Johnston, District Judge.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have ten days (filing of objections) and three days (mailing) from the date of filing this Proposed Findings and Recommendation" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be provided to opposing parties, Judge Johnston and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation, to mail a copy of the same to Petitioner, and to transmit a copy to counsel of record.

| | |
|---|---|
| July 18, 2007 | *Mary E. Stanley* |
| Date | Mary E. Stanley |
| | United States Magistrate Judge |

27